UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
CHAUNCY WESTWOOD,

                              Plaintiff,

      -against-

THE CITY OF NEW YORK,
DETECTIVE RAFAEL TATIS (TAX 947951),
and UNDERCOVER OFFICER NUMBER 84,
                              Defendants.
------------------------------------------------------------------------X

**17 CV 1513 (RJS)**

**SECOND AMENDED COMPLAINT**

JURY TRIAL DEMANDED

      Plaintiff, CHAUNCY WESTWOOD, by and through his attorneys, **THE LAW OFFICES OF MICHAEL S. LAMONSOFF, PLLC,** as and for his Second Amended Complaint, respectfully alleges, upon information and belief:

## **PRELIMINARY STATEMENT**

1.     Plaintiff brings this action for compensatory damages, punitive damages and attorney's fees pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1988 for violations of his civil rights, as said rights are secured by said statutes and the Constitution of the United States of America.

## **JURISDICTION**

2.     This action is brought pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1988, and the Fourth and Fourteenth Amendments to the United States Constitution.

3.     Jurisdiction is founded upon 28 U.S.C. §§ 1331, 1343, and 1367.

1

**VENUE**

4. Venue is properly laid in the Southern District of New York under U.S.C. § 1391(b), in that this is the District in which the claim arose.

**JURY DEMAND**

5. Plaintiff respectfully demands a trial by jury of all issues in this matter pursuant to Fed. R. Civ. P. 38(b).

**PARTIES**

6. Plaintiff, CHAUNCY WESTWOOD, is, and has been, at all relevant times, a resident of the City and State of New York.

7. Defendant, THE CITY OF NEW YORK, was and is a municipal corporation duly organized and existing under and by virtue of the laws of the State of New York.

8. Defendant, THE CITY OF NEW YORK, maintains the New York City Police Department, a duly authorized public authority and/or police department, authorized to perform all functions of a police department as per the applicable sections of the New York State Criminal Procedure Law, acting under the direction and supervision of the aforementioned municipal corporation, THE CITY OF NEW YORK.

9. At all times hereinafter mentioned, the individually named Defendant, DETECTIVE RAFAEL TATIS (TAX 947951), was a duly sworn member of said department assigned to Narcotics Borough Manhattan South, and was acting under the supervision of said department and according to his official duties.

10. At all times hereinafter mentioned, the individually named Defendant, UNDERCOVER OFFICER NUMBER 84, was a duly sworn member of said department assigned to Narcotics Borough Manhattan South, and was acting under the supervision of said department and

according to his official duties.

11. At all times hereinafter mentioned the Defendants, either personally or through their employees, were acting under color of state law and/or in compliance with the official rules, regulations, laws, statutes, customs, usages and/or practices of the State or CITY OF NEW YORK.

12. Each and all of the acts of the Defendants alleged herein were done by said Defendants while acting within the scope of their employment by Defendant, THE CITY OF NEW YORK.

13. Each and all of the acts of the Defendants alleged herein were done by said Defendants while acting in furtherance of their employment by Defendant, THE CITY OF NEW YORK.

## FACTS

14. On December 4, 2015, at approximately 8:00 p.m., Plaintiff CHAUNCY WESTWOOD was lawfully present at or near the intersection of 46th Street and Broadway, in the County, City, and State of New York.

15. At that time and place, the Defendants arrived on duty.

16. The Defendants approached Plaintiff and searched him.

17. Plaintiff was not engaged in any suspicious or illegal activity.

18. There was no reasonable basis for the Defendants to approach and search Plaintiff.

19. The search revealed no evidence of any guns, drugs or contraband.

20. Plaintiff was not engaged in any suspicious, illegal, violent, or threatening behavior.

21. Despite the absence of any wrongdoing on the part of the Plaintiff, Defendants placed the Plaintiff in handcuffs and formally arrested him, or otherwise caused Plaintiff's arrest by providing false allegations about him and ordering his arrest.

22. At no time on December 4, 2015 did Plaintiff commit any crime or violation of law.

23. At no time on December 4, 2015 did Defendants possess probable cause to arrest Plaintiff or to order Plaintiff's arrest.

24. At no time on December 4, 2015 did Defendants possess information that would lead a reasonable officer to believe probable cause existed to arrest Plaintiff.

25. Nevertheless, Defendants thereafter transported Plaintiff to the stationhouse of a local area precinct.

26. Plaintiff was held for several hours at the stationhouse before he was transported to New York County Central Booking where he was held for several hours pursuant to false allegations made by the Defendants.

27. Plaintiff was eventually summarily released from New York County Central Booking without explanation and without seeing a judge when the district attorney declined to prosecute Plaintiff.

28. The Defendants provided knowingly false and misleading information to prosecutors at the New York County District Attorney's Office.

29. As a result of the foregoing, Plaintiff CHAUNCY WESTWOOD sustained, *inter alia*, mental anguish, shock, fright, apprehension, embarrassment, humiliation, and deprivation of his constitutional rights.

30. All of the aforementioned acts of Defendants, their agents, servants and employees, were carried out under the color of state law.

31. All of the aforementioned acts deprived Plaintiff of the rights, privileges and immunities guaranteed to citizens of the United States by the Fourth and Fourteenth Amendments to the Constitution of the United States of America, and were therefore in violation of 42 U.S.C. Section 1983.

32. The acts complained of were carried out by the aforementioned individual Defendants in their capacities as police officers with all the actual and/or apparent authority attendant thereto.

33. The acts complained of were carried out by the aforementioned individual Defendants in their capacitates as police officers, pursuant to the customs, usages, practices, procedures, and rules of THE CITY OF NEW YORK and the New York City Police Department, all under the supervision of ranking officers of said department.

34. Defendants, collectively and individually, while acting under color of state law, engaged in conduct which constituted custom, usage, practice, procedure or rule of respective municipality/authority, which is forbidden by the Constitution of the United States.

## FIRST CLAIM FOR RELIEF FOR FALSE ARREST UNDER 42 U.S.C. § 1983

35. Plaintiff CHAUNCY WESTWOOD repeats, reiterates, and realleges each and every allegation set forth above with the same force and effect as if fully set forth herein and at length.

36. As a result of the Defendants' conduct, Plaintiff was subjected to illegal, improper and false arrest, taken into custody, and caused to be falsely imprisoned, detained, and confined without any probable cause, privilege, or consent.

37. As a result of the foregoing, Plaintiff's liberty was restricted, he was put in fear for his safety, and he was falsely arrested without probable cause.

## SECOND CLAIM FOR RELIEF FOR MUNICIPAL LIABILITY UNDER 42 U.S.C. § 1983

38. Plaintiff, repeats, reiterates, and realleges each and every allegation set forth above with the

same force and effect as if fully set forth herein and at length.

39. Defendants arrested, searched, and incarcerated plaintiff CHAUNCY WESTWOOD, in the absence of any evidence of criminal wrongdoing, notwithstanding their knowledge that said search, arrest and incarceration would jeopardize Plaintiff's liberty, well-being, safety, and violate their constitutional rights.

40. The acts complained of were carried out by the aforementioned individual Defendants in their capacities as police officers and officials, with all the actual and/or apparent authority attendant thereto.

41. The acts complained of were carried out by the aforementioned individual Defendants in their capacities as police officers and officials pursuant to the customs, policies, usages, practices, procedures, and rules of THE CITY OF NEW YORK and the New York City Police Department, all under the supervision of ranking officers of said department.

42. Those customs, policies, patterns, and practices include, but are not limited to:

   i. requiring officers to make a predetermined number of arrests and/or issue a predetermined number of summonses within a predetermined time frame;

   ii. requiring precincts to record a predetermined number of arrests and/or issue a predetermined number of summonses within a predetermined time frame;

   iii. failing to take any measures to correct unconstitutional behavior when brought to the attention of supervisors and/or policy makers;

   iv. failing to properly train police officers in the requirements of the United States Constitution.

43. The aforesaid customs, policies, usages, practices, procedures and rules of THE CITY OF NEW YORK and the New York City Police Department directly cause, *inter alia*, the following unconstitutional practices:

   i. arresting individuals regardless of probable cause in order to inflate the

        officer's arrest statistics;

    ii.    arresting individuals regardless of probable cause in order to positively affect precinct-wide statistics;

    iii.    falsifying evidence and testimony to support those arrests;

    iv.    falsifying evidence and testimony to cover up police misconduct.

44. Upon information, this policy was in existence as of December 4, 2015, as codified in an October 17, 2011, Police Officer Performance Objectives Operation Order in which NYPD Commissioner Kelly directed all commands that, "Department managers can and must set performance goals" relating to the "issuance of summons, the stopping and questioning of suspicious individuals, and the arrests of criminals."

45. Upon information and belief, that same Operation Order stated, "uniformed members. . . who do not demonstrate activities . . . or who fail to engage in proactive activities . . . will be evaluated accordingly and their assignments re-assessed."

46. In the case of <u>Floyd v City of New York</u>, 813 F. Supp. 2d 417, 448 (S.D.N.Y.) on reconsideration, 813 F. Supp. 2d 457 (S.D.N.Y. 2011), United States District Judge Shira A. Scheindlin denied the City of New York's motion for summary judgment, in part, based on evidence that the NYPD had a widespread practice of imposing illegal stop and frisk, summons, and arrest quotas on officers. The evidence cited in <u>Floyd</u>, included testimony from various officers, audio recordings of roll call meetings in which precinct commanders issued orders to produce certain numbers of arrests, stops and frisks, and summonses, and a labor grievance on behalf of six officers and one sergeant who were transferred out of the same 75 precinct where plaintiff was arrested for allegedly failing to meet a ten summons-per-month quota. In January 2006, a labor arbitrator found that this same 75 precinct had

7

imposed summons quotas on its officers in violation of New York law.

47. In another Southern District of New York case, Schoolcraft v. City of New York, 10 CV 6005 (RWS), the plaintiff, a police officer assigned to Brooklyn's 81 precinct alleged that precinct commanders and supervisory personnel expressly imposed arrest and summons quotas, and explicitly directed officers to "arrest and summons fully innocent people" and then come up with a justification later.

48. In 2012, Police Officer Craig Matthews commenced Matthews v. City of New York, 12 CV 1354 (BSJ) in the Southern District of New York, alleging that his complaints that the existing quota system was leading to unjustified stops and arrests, and thereby causing damage to the department's relationship with the local community led to his termination. There was little dispute that he made these complaints or that they were well founded. See Matthews v. City of New York, 779 F.3d 167, 169 (2d Cir. 2015).

49. This data-driven policing plan has resulted in other lawsuits filed by members of the NYPD in the United States District Court for the Southern District of New York, alleging that the NYPD requires officers to meet fixed numerical goals for arrests and court summonses each month.

50. In one of these lawsuits, Adhyl Polanco v. The City of New York, et al., 16 CV 9196 (LTS), for example, Officer Polanco alleges that he was retaliated against for his opposition to the racially discriminatory quota practices of the NYPD, and that he was falsely and pretextually charged with insubordination after he attempted to report misconduct and corruption within the NYPD.

51. Officer Polanco alleges that he spoke to the media and the NYPD Internal Affairs Bureau that his supervisors were aggressively using threats of termination and negative employment

actions such as low performance evaluations and punitive postings, to compel police officers to issue illegal summonses and make illegal arrests in order to achieve a goal of a certain number of arrests and a certain number of summonses set by the NYPD for each precinct for that quarter.

52. That this plan is still in effect is also reflected in a class action suit apparently filed in August 2015 by various police officers alleging that the NYPD still requires officers to meet fixed numerical goals for arrests and court summonses each month, according to a New York Times article published February 18, 2016, which can be found online at http://nyti.ms/1R9FCGu.

53. Upon information and belief, Police Officer Edwin Raymond was or is a Plaintiff in this lawsuit.

54. Officer Raymond has alleged in his lawsuit and in the media that the NYPD engaged in unconstitutional, racist, discriminatory, and unlawful practices in attempting to achieve the goal of meeting quotas, as opposed to combating crime.

55. Despite the fact that this unconstitutional conduct has been reported by civilians and members of law enforcement alike, Police Commissioner William Bratton, responded to these serious allegations dismissively. http://newyork.cbslocal.com/2016/02/23/nypd-crime-statistics-available-public/.

56. The policy or plan was kept in effect through the date of plaintiff's arrest, despite the municipal defendant's knowledge that county prosecutors were often not charging the individuals arrested, or otherwise not actively pursuing their prosecutions, or that there was insufficient evidence to justify the arrests and illegal searches, or that the arresting officers were seeking to bolster the arrests with false allegations, and that the prosecutors often had

found insufficient cause to justify the imposition of charges or continued prosecution if charges were filed.

57. This is precisely the conduct that has given rise to the constitutional violations against Mr. Westwood alleged herein. He was arrested without any probable cause and the New York County District Attorney declined to prosecute him.

58. Upon information and belief, the New York County District Attorney declined to prosecute Mr. Westwood because, while the Defendants alleged that Mr. Westwood had sold narcotics to them, no narcotics were recovered and the supervising Sergeant on the scene knew that the alleged substance was not what the Defendants claimed it to be.

59. In fact, upon information and belief, the Defendants did not field test any narcotics related to the alleged sale underlying this incident.

60. In October 2011, following a criminal bench trial in New York Supreme Court, Kings County, under indictment number 06314-2008, former NYPD narcotics officer Jason Arbeeny was convicted of planting drugs on two individuals and falsifying arrest reports. Before issuing a verdict of guilty, the trial judge scolded the NYPD for what he described as a "widespread culture of corruption endemic in its drug units." The judge further stated that the testimony demonstrated that the NYPD narcotics divisions maintain a "cowboy culture" and that he was "shocked, not only by the seeming pervasive scope of misconduct but even more distressingly by the seeming casualness by which such conduct is employed."

61. In an Order dated November 30, 2009, in Colon v. City of New York, 09- CV-0008 (E.D.N.Y.) (Docket No. 34), the Hon. Jack B. Weinstein stated:

> Informal inquiry by the court and among the judges of this court, as well as knowledge of cases in other federal and state courts, has revealed anecdotal evidence of repeated, widespread falsification by

arresting police officers of the New York City Police Department. Despite numerous inquiries by commissions and strong reported efforts by the present administration -- through selection of candidates for the police force stressing academic and other qualifications, serious training to avoid constitutional violations, and strong disciplinary action within the department -- there is some evidence of an attitude among officers that is sufficiently widespread to constitute a custom or policy by the city approving illegal conduct of the kind now charged.

62. Therefore, it is apparent that through the litigation brought in the Eastern and Southern Districts of New York, as well as the many cases filed in New York's State courts, that thousands of civilians have alleged that members of the NYPD have deliberately arrested them without probable cause. Thus, even if the municipal defendant was not the architect of the policies and routinized conduct causing these unlawful arrests, it was certainly on notice of the practice, and by failing to take any meaningful corrective steps, has ratified, endorsed, or otherwise communicated its acceptance of this policy to the officers it employs.

63. However, in an article in the New York Times on February 4, 2016, the link to which is http://nyti.ms/1nPv0mO, the City proudly announced that the NYPD had "created a new 40-member legal unit that develops evidence that the Law Department can use to defend lawsuits against the police, and the [Law Department] hired about 30 lawyers to bolster its litigation teams and to try more cases in court." According to this article, these steps were well-received by police union leaders.

64. Accordingly, rather than take meaningful steps to reduce and eliminate such misconduct by its officers, the City of New York and the NYPD have instead affirmatively announced a renewed commitment to defending such misconduct.

65. Stated differently, the City of New York's response to the litigation caused by misconduct on the part of the NYPD is, perplexingly, directed not at the deliberate, frequent, brazen

11

constitutional violations giving rise to the litigation, but rather at defending such misconduct, thereby enabling officers to continue engaging in unconstitutional conduct without fear of being sued or held accountable. In so doing, the City has dispensed altogether with any pretense that such misconduct is not sanctioned, ratified, or otherwise endorsed by the City of New York and the NYPD's executive leaders and supervisory personnel.

66. Based on the foregoing, the municipal defendant has not only tolerated, but actively fostered a lawless atmosphere within the NYPD and that the City of New York, at the bare minimum, has been on notice of, and remained deliberately indifferent to, the risk that the undue emphasis on arrest quotas, or minimum activity levels, particularly when coupled with a decidedly and deliberately indifferent level of supervision, would lead to the violation of individuals' constitutional rights in general, and the violation of plaintiff's rights in particular.

67. The foregoing customs, policies, usages, practices, procedures and rules of THE CITY OF NEW YORK and the New York City Police Department constitute a deliberate indifference to the safety, well-being and constitutional rights of Plaintiff, CHAUNCY WESTWOOD.

68. The foregoing customs, policies, usages, practices, procedures and rules of THE CITY OF NEW YORK and the New York City Police Department were the direct and proximate cause of the constitutional violations suffered by Plaintiff as alleged herein.

69. The foregoing customs, policies, usages, practices, procedures and rules of THE CITY OF NEW YORK and the New York City Police Department were the moving force behind the constitutional violations suffered by Plaintiff as alleged herein.

70. As a result of the foregoing customs, policies, usages, practices, procedures and rules of THE CITY OF NEW YORK and the New York City Police Department, Plaintiff was placed

under arrest unlawfully.

71. Defendants, collectively and individually, while acting under color of state law, were directly and actively involved in violating the constitutional rights of Plaintiff.

72. Defendants, collectively and individually, while acting under color of state law, acquiesced in a pattern of unconstitutional conduct by subordinate police officers, and were directly responsible for the violation of Plaintiff's constitutional rights.

73. All of the foregoing acts by defendants deprived Plaintiff of federally protected constitutional rights, particularly their Fourth and Fourteenth Amendment rights to be free from unreasonable search and seizure.

**WHEREFORE**, the Plaintiff respectfully requests judgment against Defendants on each of the foregoing causes of action as follows:

   i. an order awarding compensatory damages in an amount to be determined at trial;

   ii. an order awarding punitive damages in an amount to be determined at trial;

   iii. reasonable attorneys' fees and costs under 42 U.S.C. §1988; and

   iv. directing such other and further relief as the Court may deem just and proper, together with attorneys' fees, interest, costs and disbursements of this action.

Dated: New York, New York
       September 20, 2017

Respectfully submitted,

**LAW OFFICES OF MICHAEL S. LAMONSOFF, PLLC**
*Counsel for the Plaintiff*

/s/
By: JESSICA MASSIMI (JM-2920)
32 Old Slip, 8th Floor
New York, New York 10005
(212) 962-1020